UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES : | |
| : | |
| v. : | 19-CR-410 (CRC) |
| : | |
| NORMAN MURPHY : | |

### MOTION FOR DISCOVERY OF JURY SELECTION MATERIALS

Norman Murphy, through undersigned counsel, respectfully moves this Court, pursuant to 28 U.S.C. § 1867(f), to grant him discovery of information relating to the selection of petit juries in this district during the Covid-19 pandemic, in order to ensure that jurors have been selected from a fair cross-section of the community, as guaranteed by the Sixth Amendment to the Constitution of the United States and the Jury Selection and Service Act.

*Background*

Defendant, Norman Murphy, an African-American male, is charged with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18, United States Code, § 922(g)(1).

The government contends that on December 8, 2019, as officers riding in a car approached a group of people – all of whom were African-American males – Mr. Murphy "attempt[ed] to conceal himself behind another individual, remove[d] an object from his person and walk[ed] toward the back of a playground with the object in his right hand." The officers claim that they then observed Mr. Murphy "toss the object from his right hand to the back fence of the playground, then return to the group of congregated adults." *Affidavit in Support of an Application for a Search Warrant*, at 1.

*Argument*

*The Law*

"Fundamental to . . . the Sixth Amendment guarantee of a trial by [an impartial] jury is that jurors be selected from a fair cross-section of the community." *Sweet v. United States*, 449 A.2d 315, 323 (D.C. 1982); *accord Taylor v. Louisiana*, 419 U.S. 522, 530 (1975).

The Jury Selection and Service Act ("the Act") preserves this guarantee. 28 U.S.C. § 1861 ("[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district … wherein the court convenes….")

The Act further provides that "[e]ach United States district court shall devise and place into operation a **written plan** for random selection of … petit jurors that shall be designed to achieve the objectives of 1861 and 1862 of this title…." 28 U.S.C. § 1863(a). (Emphasis added.)

The plan must "specify detailed procedures" that are "designed to ensure the random selection of a fair cross section of the persons residing in the community in the district … wherein the court convenes." *Id.*, at § 1863(b)(3).

A defendant who contemplates a challenge to the "fair cross section" selection of a jury "shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion. 28 U.S.C. § 1867(f). *Test v. United States*, 420 U.S. 28 (1975) (per curiam). *Test* makes it clear that "a litigant has essentially an *unqualified* right to inspect jury lists") (Emphasis in original.)

The Act also establishes that a defendant who believes that their fair-cross-section right has been violated may bring a motion for appropriate relief, including dismissal of their indictment. 28 U.S.C. § 1867(b).

Mr. Murphy now[1] seeks to exercise this essentially unqualified discovery right to ensure that any changes to the jury selection process due to the Covid-19 pandemic have not compromised his fair-cross-section right. If such changes have indeed compromised his fair-cross-section right, Mr. Murphy will file a motion for relief under the Act.

Still, though Mr. Murphy need not articulate a theory of noncompliance with the Act as a prerequisite before exercising his inspection rights, Mr. Murphy offers the following outline of his theory to assist the Court in its efforts to make an informed decision about what information is, or is not, relevant to Mr. Murphy's inquiry.

*Relevant Factual Information in Support of Motion*

Covid-19 has undeniably hit some demographic groups harder than others. According to the Centers for Disease Control and Prevention ("CDC"), "[r]ace and ethnicity are risk markers for other underlying conditions that affect health including socioeconomic status, access to health care, and exposure to the virus related to occupation." CDC, *Covid-19 Hospitalization and Death by Race/Ethnicity* (Nov. 30, 2020), https://bit.ly/38Il736. Accordingly, CDC data shows that cases, hospitalizations, and deaths are all higher for Black and Hispanic people than for White people. *Id.*

The District of Columbia's experience tracks this broader trend. For example, the District of Columbia is 46% Black. U.S. Census Bureau, *Quick Facts: District of Columbia*, https://bit.ly/2X5mALr (data current as of July 1, 2019). But 73% of the people who have lost their lives to Covid-19 in the city have been Black. Government of the District of Columbia, *Covid-19 Surveillance*, https://bit.ly/3n6u6Am (data current as of Dec. 30, 2020). And there is no reason to suspect that rates of hospitalization and severe consequences from Covid-19 are not similarly racially skewed.

---

[1] There are reasons that the defendant did not raise this issue before now, but counsel prefers not to put those reasons "on the record" (unless the Court inquires of counsel in a hearing). Counsel affirmatively states, however, that the timing of the filing of this motion was not "calculated" to delay the trial of this matter – especially given Mr. Murphy's bond status. And counsel, perhaps naively, still hopes that Mr. Murphy's trial can proceed on the currently-scheduled trial date.

Given that Covid-19 is afflicting some demographic groups more than others, potential jurors from those harder-hit demographic groups might be disproportionately exempted from jury service.

For example, the District of Columbia's Superior Court jury plan provides that excuses, deferrals, or disqualifications from jury service may be granted "upon a finding of undue hardship, extreme inconvenience, public necessity or temporary physical or mental disability." Jury Plan for the Superior Court of the District of Columbia § 6 (effective Feb. 2020). The Superior Court has—appropriately—read this provision to "encompass those suffering with Covid-19." Letter from Hon. Anita Josey-Herring, Chief Judge, Superior Court of D.C., to David Knight, Chief, Trial Division, PDS (Dec. 28, 2020) (Ex. A).

Mr. Murphy is not in possession of sufficient information to determine whether this Court's plan – if there is a Covid-19 jury selection plan - risks compromising Mr. Murphy's fair-cross-section rights.

Several federal district courts have granted criminal defendants' requests for discovery based on similar concerns about the effect of Covid-19 on their fair-cross-section rights. *See, e.g.*, *United States v. Holmes*, No. 18-cr-00258, 2020 WL 5408163 (N.D. Cal. Sept. 9, 2020); *United States v. Corbett*, No. 20-cr-213, 2020 WL 5803243 (E.D.N.Y. Aug. 21, 2020); *United States v. Merrick*, No. 20-cr-009, 2020 WL 4808634 (D.N.H. Aug. 18, 2020).

Accordingly, Mr. Murphy requests the following two categories of discovery: (1) depositions of Jury Office personnel able to explain how this district's jury-selection process works, as well as to explain what documents exist and whether they would be informative; (2) information relating to the formulation of jury venires during the Covid-19 pandemic. Mr. Murphy acknowledges that some of the requested information may not yet be available (for example, the court may not have finished locating potential jurors who have failed to respond to their summons.

Nevertheless, Mr. Murphy cannot wait any longer to begin determining whether the jury panel from which he will be required to select a jury will represent a fair cross section of this district's population.

Undersigned counsel is not aware of any similar motion having been filed in any case currently before this Court. To the extent that discovery of jury selection materials has been requested in other cases, and overlaps with Mr. Murphy's request, this Court may prefer to consolidate any discovery process in order to address this issue more expeditiously.

In either instance, however, this "fair cross section" inquiry is too important and timely, in light of the Covid-19 pandemic, to be left unaddressed.

The following discovery process may be necessary to satisfy constitutional representation standards by undersigned counsel:

1) Depositions of Jury Office personnel.

Mr. Murphy includes, below, a list of documents he believes will be necessary to his evaluation of this district's jury-selection system. Unfortunately, his ability to make precise document requests is limited by his current ignorance about this district's jury-selection process, both prior to and since the beginning of the Covid-19 pandemic. To ensure that his document review is sufficiently comprehensive but not overbroad, Mr. Murphy proposes that counsel first be permitted to depose those persons with knowledge who can provide complete information about how the system works, who perform various jury duties, and who know which documents exist and would be informative. Following such depositions, if the Court deems it appropriate, counsel for Mr. Murphy would confer with the government about which specific records are being requested, and what, if any, objections the government has to those requests, after which the parties could submit a joint status letter to narrow any disputes.

2) Documents relating to the formulation of jury venires during the pandemic.

a. The jury plan currently in effect currently.

b. Any changes to the jury plan due to Covid-19.

c. Source lists from which names of District of Columbia residents are originally drawn to identify potential jurors, including but not limited to, the source lists identified in this district's Jury Plan. If the source lists used diverge from the source lists listed in the district's Jury Plan, Mr. Murphy seeks documents that explain, authorize or endorse such a divergence. Mr. Murphy also seeks documents that reflect how often the various source lists relied upon are updated.

d. All documents relating to how the various sources lists used are merged to compile one Master Jury List as likely contemplated by this district's Jury Plan, or if the various source lists are not merged, documents that explain, authorize or endorse the maintenance of separate lists.

e. All lists of potentially qualified, qualified and unqualified jurors derived from the original source lists including but not limited to a copy of any Master Jury List and attendant files that may be identified in the district's Jury Plan.

f. All documents and information showing how any Master Jury List is maintained, including, but not limited to, how and how often information on any Master Jury List should be revised or names should be added to or subtracted.

g. Copies of the summons and qualifications forms sent to potential jurors, including any supplementary Covid-19 questionnaires.

h. The protocols for addressing potential jurors who fail to respond to their summonses, including how long those summoned are given to respond and what follow-up steps are taken if they fail to respond.

i. Records of any actual steps taken to contact individual potential jurors who failed to respond to their summonses.

j. The process by which summoned potential jurors have been or will be granted excusals, deferrals, or disqualifications, including the process by which excusals,

deferrals, or disqualifications have been or will be granted for reasons related to Covid-19.

k.  The actual reasons for which excusals, deferrals, or disqualifications have been granted to individual potential jurors to whom the Court sent summonses.

l.  The process by which the Court decided or intends to decide which qualified individuals who responded to the summons are asked to report for jury service.

m.  Demographic information[2] for each summoned potential juror, to the extent that information is available.

n.  Demographic information for each potential juror who returned a qualification form.

o.  Demographic information for each potential juror issued an excusal, deferral, or disqualification.

p.  Demographic data, for comparison, relating for each potential juror who was summoned, who returned a qualification form, and who was issued an excuse, deferral, or disqualification for individuals called for jury service in 2018 and 2019.

WHEREFORE, in light of the foregoing, defendant moves for an Order permitting him to inspect the materials listed above, conduct any depositions that may be required, and for any other relief this Court may deem just and proper.

Respectfully submitted,

---

[2] By "demographic information," defendant refers to race, gender, ethnicity, age or year of birth, zip code, occupation, and identifying number (e.g., juror number or some other unique identifier), but not personal information that could be used to identify an individual, such as name, address, date of birth, or social security number.

*Stephen F. Brennwald*

_____

Stephen F. Brennwald, Esq.
Bar No. 398319
Brennwald & Robertson, LLP
922 Pennsylvania Avenue, S.E.
Washington, D.C. 20003
(301) 928-7727
(202) 544-7626 (facsimile)
sfbrennwald@cs.com
Attorney for Norman Murphy

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 27, 2021, a copy of the foregoing motion was sent, by ECF to all parties of record in this case.

*Stephen F. Brennwald*

_____

Stephen F. Brennwald